**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| COOL SPRINGS LLC, | : | |
|      Reorganized Debtor | : | Case No. 22-10912 (MFW) |
| _____ | : | |
| | : | |
| WINGSPIRE EQUIPMENT FINANCE LLC, | : | Adv. Pro. No. 23-50395 |
| | : | (MFW) |
|      Plaintiff | : | |
| | : | |
|      v. | : | |
| | : | |
| E-CRANE INTERNATIONAL USA INC., | : | Rel. Docs. 12, 15, 16, |
| | : | 17, 20, 21 |
|      Defendant | : | |

**MEMORANDUM OPINION**

     Before the Court is the Motion of E-Crane International USA Inc. ("ECI") to Dismiss, or in the alternative, a Motion for Summary Judgment on the Amended Complaint filed against it by Wingspire Equipment Finance LLC f/k/a Liberty Commercial Finance LLC ("Wingspire"). For the reasons stated below, the Court will grant in part and deny in part the Motion to Dismiss.

I.   FACTUAL BACKGROUND[1]

---

    [1]   The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure on a motion to dismiss. Instead, the facts recited are those well-pled allegations of the Complaint, which must be accepted as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Pursuant to Fed. R. Evid. 210, the Court may take judicial notice of certain background facts which are not in dispute from the pleadings filed in the main bankruptcy case. See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including

Metal Services LLC (the "Debtor") was in the business of providing services to global steel companies, including the processing and removal of molten slag and metal scrap.[2]  To perform those services, the Debtor purchased (or financed) large pieces of machinery and equipment.[3]  On June 23, 2020, Wingspire and the Debtor entered into a Master Lease pursuant to which Wingspire agreed to finance the manufacturing of certain equipment to be purchased by the Debtor.[4]  As part of that Master Lease, the Debtor agreed to "assign to Lessor all of its rights and interests in the Equipment and the Purchase Documents, but none of [its] obligations," and Wingspire agreed to lease that Equipment to the Debtor.[5]  The Debtor also granted Wingspire a security interest in the Equipment, and any accessories, as well as in any cash deposits being held by Wingspire.[6]  Wingspire

---

judicial proceedings, in addition to the allegations in the complaint.").

[2]    D.I. 13 at ¶ 6.  References to the docket in the Debtor's bankruptcy case, which was jointly administered under Phoenix Services Topco, LLC, Bankr. Case No. 22-10906, are to "D.I. #."  References to the docket in the instant adversary proceeding are to "Adv. D.I. #."

[3]    Id. at ¶ 31.

[4]    Adv. D.I. 12 at Ex. B.  The Master Lease was executed by the Debtor and Liberty Commercial Finance, LLC, the predecessor in interest to Wingspire.  Id.

[5]    Id. at §§ 1 & 3.

[6]    Id. at § 25.

2

filed financing statements related to its security interests on June 3, 2020, and February 17, 2021.[7]

In October 2021 and February 2022, the Debtor circulated requests for proposals for the construction of two cranes (the "Cranes") to be used by the Debtor at the Nucor Steel Gallatin LLC ("Nucor") site.  The Debtor subsequently accepted ECI's proposals for construction of the Cranes per the Debtor's specifications (the "Proposals").[8]  Pursuant to the ECI contracts, the Debtor agreed to pay, according to progress payment schedules, a total of $1,807,300 for the construction of Crane 1 and $1,466,500 for the construction of Crane 2.[9] Wingspire agreed to provide funding for the purchase of the Cranes under Schedule Nos. 18 and 26 of the Master Lease.[10] Wingspire advised ECI of the arrangement with the Debtor, arranged for ECI to bill Wingspire directly for the progress payments, and paid ECI directly for progress payments due on the Cranes.[11]

On September 27, 2022, the Debtor and several of its affiliates filed cases under chapter 11 of the Bankruptcy Code.

---

[7]    Id. at Ex. E.

[8]    Id. at Ex. A.

[9]    Id.

[10]    Id. at Ex. B.

[11]    Id. at ¶¶ 24, 26-31.

3

As of the petition date, ECI had been paid the first two scheduled payments (a total of $1,084,380) for Crane 1 and the first payment ($439,950) for Crane 2 (the "Deposits").[12]

In early January, 2023, the Debtor filed a motion to reject its contracts with Nucor and Nucor filed a motion to compel rejection of its contracts.[13]  Those motions were ultimately settled by rejection of the Nucor contracts relating to the Gallatin site.[14]  The Court approved that settlement on March 3, 2023.[15]

On February 6, 2023, ECI filed a Motion seeking to compel the Debtor to assume or reject its purchase contracts by a date certain.[16]  That motion was resolved by a stipulation between the Debtor and ECI that the purchase contracts would be rejected and the Debtor would abandon any interest it had in the contracts and any property that is the subject of those contracts, effective immediately; the Court approved that stipulation on April 10, 2023.[17]

On April 27, 2023, the Debtors filed an omnibus motion to

---

[12]   Adv. D.I. 12 at ¶¶ 29-31.

[13]   Id. at ¶¶ 33-34; D.I. 397 & 400.

[14]   Adv. D.I. 12 at ¶ 35; D.I. 554.

[15]   Adv. D.I. 12 at ¶ 36; D.I. 606.

[16]   Adv. D.I. 12 at ¶ 39; D.I. 503.

[17]   Adv. D.I. 12 at ¶ 39; D.I. 699 & 701.

reject, inter alia, the Master Lease with Wingspire.[18]  The Court
entered an order on May 23, 2023, granting that motion and
providing that "[a]ny party with any interest in the E-Cranes,
the E-Crane Contracts, or the E-Crane deposits is permitted to
exercise any rights and remedies any such party may have in the
E-Cranes under the E-Crane Contracts or the related lease
documents, as applicable; *provided that*, notwithstanding anything
herein to the contrary, this provision does not grant any right
to exercise any rights or remedies against the Debtors or
property of the Debtors' estates."[19]

    Thereafter, Wingspire filed an adversary complaint against
ECI seeking (1) damages for breach of contract; (2) restitution
claims for ECI's retention of Crane 1 and the Deposits paid for
the construction of the Cranes; and (3) a claim for a
constructive trust in Wingspire's favor on the Deposits it paid
for Crane 2.[20]

    On September 27, 2023, ECI filed a Motion to Dismiss the
Wingspire Complaint or, in the alternative, a Motion for Summary
Judgment.[21]  Wingspire filed its response on October 26, 2023.[22]

---

[18]    Adv. D.I. 12 at ¶ 40; D.I. 733.

[19]    Adv. D.I. 12 at ¶ 40; D.I. 804 at ¶ 4.

[20]    Adv. D.I. 12 at ¶¶ 44-75.

[21]    Adv. D.I. 15.  In support, ECI filed a Memorandum of
Law and the Declaration of Jon T. Powers, which attached copies
of various documents related to the Wingspire claims.  Adv. D.I.

ECI replied on November 2, 2023.[23]  The matter is ripe for decision.

II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding.[24]  This action is a proceeding related to the bankruptcy case as it involves a question of what was property of the estate (and liens on that property) as of the petition date.[25]  In addition, the parties have consented to entry of a final order by the Court on the Motion to Dismiss.[26]

III. <u>DISCUSSION</u>

A.  <u>Standard of Review</u>[27]

1.  <u>Rule 12(b)(6)</u>

---

16 & 17.

[22]    D.I. 20.

[23]    D.I. 21.

[24]    28 U.S.C. §§ 157(b) & 1334(b).

[25]    <u>Id.</u> at § 157(b).

[26]    <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 575 U.S. 665, 686 (2015) (holding that the bankruptcy court may enter a final order without offending Article III so long as the parties consent).  <u>See</u> Adv. D.I. 12 at ¶ 13 & Adv. D.I. 16 at ¶ 3.

[27]    The applicable Federal Rules of Civil Procedure are incorporated into the Federal Rules of Bankruptcy Procedure.  <u>See</u> Fed. R. Bankr. P. 7012 & 7056.  Therefore, citations herein are to the Federal Rules of Civil Procedure.

The Defendant bases its Motion to Dismiss on Rule 12(b)(6), which provides for dismissal for "failure to state a claim upon which relief can be granted."[28]  Under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[29]  To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."[30]  Two "working principles" underlie this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.  Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[31]

Under this standard, a complaint must nudge claims "across the line from conceivable to plausible."[32]  The court must draw

---

[28]   Fed. R. Civ. P. 12(b)(6).

[29]   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[30]   Id. at 570.

[31]   Iqbal, 556 U.S. at 663-64 (citation omitted).

[32]   Twombly, 550 U.S. at 570.

all reasonable inferences in favor of the plaintiff,[33] and the movant "bears the burden to show that the plaintiff's claims are not plausible."[34]

In weighing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[35] Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[36] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[37] After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged

---

[33]    See, e.g., Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018).

[34]    UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC), 610 B.R. 779, 783 (Bankr. D. Del. 2020).

[35]    Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675).

[36]    Santiago, 629 F.3d at 130.  See also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 679).

[37]    Santiago, 629 F.3d at 130.

misconduct.[38]

    2.    Rule 56

The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[39]

In considering a motion for summary judgment under Rule 56, the Court must view the inferences from the record in the light most favorable to the non-moving party.[40]  If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, however, the Court must enter judgment in the movant's favor.[41]

The movant bears the burden of establishing that no genuine issue of material fact exists.[42]  A fact is material when it

---

[38]    Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

[39]    Fed. R. Civ. P. 56(c).

[40]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Wagner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).

[41]    Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

[42]    Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp., Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007).

could "affect the outcome of the suit."[43]

Once the moving party has established its prima facie case, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of fact for trial.[44]  If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied.[45]

B.  Appropriateness of Summary Judgment at this Stage

Wingspire raises as a preliminary matter that ECI's request for summary judgment is inappropriate at this stage of the proceedings where there has been no initial discovery conference or any discovery conducted in this adversary proceeding.[46]  It

---

[43]  Anderson, 477 U.S. at 248.

[44]  Id. at 252.  See also Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).

[45]  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

[46]  See, e.g., Bruni v. City of Pittsburgh, 824 F.3d 353, 361 (3d Cir. 2016) (reversing order granting motion to dismiss where lower court considered material beyond the complaint - testimony and supplemental declarations - which converted it to a Rule 56 motion but failed to provide notice of its intention to do so to allow the non-movant an opportunity to submit materials in response); Arco Nat'l Constr., LLC v. MCM Mgmt. Corp., Civ. A. No. 20-3782, 2021 U.S. Dist. LEXIS 172573, at *15 (D. Md. Sept. 10, 2021) (finding, despite non-movant's failure to file an affidavit or otherwise indicate that discovery was necessary, that conversion of a motion to dismiss to one for summary judgment was premature because "the factual record [was] not fully developed").

contends that there are disputed issues of fact, namely whether Wingspire and ECI entered into a separate contract.

ECI responds that its request for summary judgment was based solely on its citation to the underlying contracts between it and the Debtor and the invoices it sent to Wingspire based on those contracts.[47] ECI notes that Wingspire's Amended Complaint refers to those documents, but does not attach them. Therefore, ECI filed a declaration attaching those documents, which it asks the Court to consider in ruling on the Motion to Dismiss.

The Court concludes that it is not necessary for ECI to seek relief under Rule 56 for the Court to consider the documents submitted by it. In deciding a motion to dismiss, the Court can consider documents that are referenced in the complaint.[48] In the Amended Complaint, Wingspire alleges that a contract exists

---

[47]     Adv. D.I. 17 at Exs. A-E.

[48]     Bond v. Rosen (In re NSC Wholesale Holdings LLC), 637 B.R. 71, 84 (Bankr. D. Del. 2022) (holding that the court may consider documents that are integral to, or explicitly relied on in, the complaint without converting a motion to dismiss into a motion for summary judgment). See also Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (explaining rationale behind allowing court to consider documents relied upon in the complaint: "the primary problem raised by looking into documents outside the complaint — lack of notice to the plaintiff — is dissipated '[w]here the plaintiff . . . and has relied upon these documents in framing the complaint.'"). Cf. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997) (holding that in considering a motion to dismiss the district court "was not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based.") (emphasis added).

between it and ECI as evidenced by, inter alia, the invoices, and the Proposals on which the invoices were based, which ECI sent to it at its request.[49]

Further, in deciding a motion to dismiss an adversary proceeding, the Court may consider pleadings in the main bankruptcy case that are not in dispute.[50]  The contract documents were attached to the proofs of claim filed by ECI in the main bankruptcy case on January 9, 2023.[51]

Because (1) the Complaint makes reference to (and its claims are based on) the documents which ECI asks the Court to consider, (2) ECI has specifically identified and filed those documents in connection with its motion to dismiss, (3) the documents were filed in the main bankruptcy case, (4) Wingspire did not contest the authenticity or relevance of the documents, and (5) the documents are relevant to the parties' dispute, the Court will consider the contract documents in deciding the Motion to Dismiss.

C.    Arguments on Motion to Dismiss

1.    ECI's Arguments

a.    Security Interest in Crane 1

ECI argues that Wingspire's claim to a security interest in

---

[49]    Adv. D.I. 12 at ¶¶ 4, 16-18.

[50]    See n.1 supra.

[51]    Adv. D.I. 17 at Exs. D & E.

Crane 1 must be dismissed.  ECI asserts that, under the contract between it and the Debtor, title to the Cranes remained with ECI until the purchase price was paid in full.[52]  Because the Amended Complaint alleges that the full purchase price was never paid for either Crane,[53] ECI contends that it still has title to Crane 1 and is entitled to retain possession of it.  Because title never passed to the Debtor, ECI argues that any purported security interest in the Cranes granted by the Debtor to Wingspire never attached and is invalid vis a vis ECI under the Uniform Commercial Code (the "UCC").[54]  For the same reason, ECI argues that the assignment by the Debtor to Wingspire under the Master Lease of all of the Debtor's rights, title and interest to the Cranes did not give Wingspire any title or interest in Crane 1.[55]

---

[52]    Adv. D.I. 17 at Ex. A, p 16 at ¶ 22 ("The Product shall remain the property of the Supplier until paid for in full to the extent that such retention of title is valid under the relevant law."), p 25 at ¶ 52 ("The Plant shall remain the property of the Contractor until paid for in full, including payment for installation of the Plant, to the extent that such retention of title is valid under the relevant law.").

[53]    Adv. D.I. 12 at ¶¶ 21, 29-30.  The Amended Complaint alleges that Crane 1 has been completed while ECI has not even performed the design and development work on Crane 2 for which the first progress payment was made.  Id. at ¶¶ 30-31.

[54]    Del. Code Ann. tit. 6, § 9-203(b)(1)-(3).  See also United Pac. Ins. Co. v. Ripsom, Civ. A. No. 7056 (1982), 1984 Del. Ch. LEXIS 578, at *6 (Del Ch. Sept. 25, 1984).

[55]    Ruiz v. New Garden Twp., 376 F.3d 203, 212 (3d Cir. 2004) (holding as a matter of fundamental property law, that "a lessor can transfer no greater rights than he possesses" and where the purported owner had no vested property right in the

Wingspire does not answer this argument directly.  Instead, Wingspire responds that it has alleged in the Amended Complaint that it had rights in the Cranes and Deposits as a result of a separate agreement it had with ECI.

Although it argues now that it is relying on a separate agreement between itself and ECI to support its claims for relief, Wingspire nonetheless alleged in its Amended Complaint that the Debtor assigned to it all the Debtor's rights in the Cranes and Deposits and granted it a security interest in the Cranes which it perfected by filing UCC financing statements.[56]

The Court finds that those allegations are insufficient to support a claim that Wingspire does in fact have a security interest in the Cranes vis a vis ECI.  Under the UCC, the Debtor could not convey a security interest in the Cranes until the Debtor itself had an interest in them.  In order for a security interest to attach to goods, and to be perfected and enforceable against third parties, certain requirements must be met, including that the debtor has rights in the collateral.[57]

Under the terms of the contract between the Debtor and ECI,

---

property, its tenants had no rights in the property).

[56]   Adv. D.I. 12 at ¶¶ 22-25.

[57]   Del. Code Ann. tit. 6, § 9-203(b)(2).  See also United Pac., 1984 Del. Ch. LEXIS 578, at *6.

14

ECI retained title to the Cranes until it was paid in full.[58]
The allegations of Wingspire in its Amended Complaint confirm
that ECI was not paid in full for either Crane.[59]  "It is
hornbook law that the debtor can only grant a security interest
in whatever rights he has in the collateral."[60]  The Amended
Complaint in this case does not allege that the Debtor had any
rights in the Cranes or the Deposits that were sufficient to
permit it to convey a security interest therein to Wingspire.
Further, the Amended Complaint does acknowledge that the Debtor
rejected the contract it had with ECI for the construction of the
Cranes, without any objection by Wingspire.[61]

Therefore, on the face of the Amended Complaint, the Court
finds that Wingspire has not stated a claim for relief as the
owner of, or the holder of a perfected security interest in, the
Cranes through its contract with the Debtor.

b.   <u>Wingspire's alleged contract with ECI</u>

Wingspire does assert, however, that it has interests in the

---

[58]    Adv. D.I. 17 at Ex. A, p 16 at ¶ 22 & p 25 at ¶ 52.

[59]    Adv. D.I. 12 at ¶¶ 21, 29-30.

[60]    <u>In re Ferandos</u>, 402 F.3d 147, 156 (3d Cir. 2005)
(concluding that debtor could not grant a security interest in
funds placed in escrow because he retained no interest therein).
<u>See also</u> <u>In re WL Homes</u>, 534 Fed. Appx. 165, 168 (3d Cir. 2013)
("A debtor may pledge as security property it does not fully own,
but may only pledge the rights that it has in the property.").

[61]    Adv. D.I. 12 at ¶ 39.

Cranes and the Deposits as a result of a direct contract between it and ECI.  ECI argues that this claim must also be dismissed because ECI contends that there is no valid, enforceable direct contract (implied or express) between ECI and Wingspire under which Wingspire can assert any claim to the Cranes or the Deposits.

### i.   Implied contract

First, ECI argues that Wingspire has failed to allege sufficient facts to support the finding of an implied contract between Wingspire and it because there is an express contract between ECI and the Debtor which covers the same subject (the construction and sale of the Cranes) and directly contradicts Wingspire's assertions.[62]  ECI notes that the express contract it has with the Debtor (1) does not mention any obligation to Wingspire or any interest that Wingspire may have in the Cranes, and (2) contains no consent of ECI to any security interest or assignment of the Debtor's interests in the Cranes or Deposits to Wingspire.  In particular, ECI argues that any contract "implied" as a result of it sending the invoices for the Debtor's Cranes to Wingspire does not (and cannot) contradict the express contract

---

[62]    See, e.g., Cred Inc. Liquidation Tr. v. Uphold HQ Inc. (In re Cred Inc.), 650 B.R. 803, 837-38 (Bankr. D. Del. 2023) (concluding that there was no implied loan agreement between the debtor and the plaintiff because the existence of that contract was directly contradicted by an agreement by a third party to loan funds to the debtor).

that ECI had with the Debtor on which the invoices are based, including the express provision that title in the Cranes was held by ECI until it received payment in full.

While the Amended Complaint does allege that an implied contract existed between Wingspire and ECI,[63] Wingspire argues in its response that it is not asserting an implied contract exists. Instead, it contends that there was an express contract between it and ECI.

Because Wingspire is not now asserting that an implied contract exists between it and ECI, the Court finds it unnecessary to determine if the Amended Complaint sufficiently alleges an implied contract.

ii.  <u>Express contract</u>

ECI argues further, however, that the Amended Complaint does not contain sufficient factual allegations to support a claim that an express contract exists between Wingspire and ECI. First, it asserts that there was no writing between Wingspire and ECI which could be construed as a contract and, therefore, the statute of frauds is not satisfied.[64]

---

[63]    Adv. D.I. 12 at ¶ 45.

[64]    <u>See</u> Del. Code Ann. tit. 6, §2-201 ("[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is a record sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought.").

Wingspire disagrees, contending that it has pled the existence of a written contract between it and ECI in the Amended Complaint, consisting of invoices, the Proposals, and other communications.[65]  Wingspire asserts that the Amended Complaint alleges that the invoices and Proposals provided by ECI to Wingspire contained all the relevant terms (price, payment, and delivery details) necessary to constitute an express contract.[66] Wingspire also alleges that the parties' conduct created an enforceable contract between it and ECI.[67]  This, Wingspire argues, is sufficient to satisfy the statute of frauds.[68] Wingspire alternatively argues that the statute of frauds is not applicable because the Cranes were to be to constructed within one year.[69]

---

[65]    Adv. D.I. 12 at ¶¶ 27-28.

[66]    Id. at ¶¶ 26-30.  See Johnson v. Eric's Chop Shop, Inc., C.A. No. 00C-10-153, 2003 Del. Super. LEXIS 250, at *10 (Del. Super. Ct. July 14, 2003) (holding that under the Delaware statute of frauds and the UCC, the writing contained sufficient detail about the inventory and property sold, the price, and the parties thereto, for the court to find a binding contract existed).

[67]    Adv. D.I. 12 at ¶¶ 27-30.

[68]    See Del. Code Ann. tit. 6, §2-201.

[69]    Adv. D.I. 12 at Exs. A-1 & A-2.  Cf. Del. Code Ann. tit. 6, § 2714 (stating that the statute of frauds applies to "any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the contract is reduced to writing, or some memorandum, or notes therefore, are signed by the party to be charged therewith") (emphasis added).

18

ECI responds that the writings exchanged between it and Wingspire were only invoices for the progress payments due by the Debtor under the Debtor's contracts with ECI.[70]  At most, ECI asserts, those documents evidence that it agreed to accept payment from Wingspire for obligations owed by the Debtor.  It contends that the Amended Complaint does not allege facts sufficient to find that ECI acted in any manner suggesting an intent to be bound by any "agreement" with Wingspire.[71]  It argues that the Amended Complaint only contains allegations of Wingspire's intent, not ECI's intent.

The Court disagrees with ECI and finds that Wingspire has adequately alleged the existence of a written agreement between it and ECI.  The Amended Complaint references the invoices (addressed to Wingspire) and other communications between the parties as the written agreement.  While ECI asserts that it did not intend to create a contract with Wingspire by providing those

---

[70]    Adv. D.I. 17 at Ex. E.

[71]    See Cred, 650 B.R. at 838 (finding that the plaintiff had not pled any facts to support the conclusion that the defendant acted in a manner that suggested its intent to be bound to any contract with the plaintiff); Chase Manhattan Bank v. Iridium Africa Corp., 239 F. Supp. 2d 402, 408 (D. Del. 2002) ("the parties' intent and mutual assent to an implied-in-fact contract is proven through conduct rather than words."); CLP Toxicology, Inc. v. Casla Bio Holdings LLC, C.A. No. N18C-10-332, 2021 Del. Ch. LEXIS 131, at *31-32 (Del. Ch. June 24, 2021) (holding that a "contract will be implied-in-fact only when the Court might fairly infer such an intent from the evidence and the agreement represents the presumed intention of the parties as demonstrated by their conduct").

documents to it and disputes that that agreement, if any, created
an interest in the Cranes, the Court concludes that the intent of
the parties and the effect of the agreement raise a genuine issue
of material fact.  At this stage of the proceedings, the Court
must accept the allegations in the Amended Complaint as true.
Doing so the Court concludes that the Amended Complaint
adequately states a claim that there was a written contract
between ECI and Wingspire which Wingspire alleges gave it an
interest in the Cranes.

> c.  Claims for unjust enrichment and constructive trust

In the event that it is not successful on its claim that it
has a contract with ECI as alleged in Count 1 of the Amended
Complaint, Wingspire asserts an alternative claim[72] in Counts 2
and 3 for unjust enrichment as a result of ECI's retention of
Crane 1 and the initial Deposit on Crane 2.  Wingspire contends
that it was impoverished by its payment of over $1 million in
Deposits on Crane 1 and that ECI was unjustly enriched by
retaining that money while refusing to deliver Crane 1.
Wingspire also alleges that it was impoverished by its payment of
the initial Deposit on Crane 2 (in excess of $400,000) and that
ECI was unjustly enriched by retaining that Deposit while
performing no work on Crane 2.  In Count 4 Wingspire asserts,

---

[72]  Fed. R. Civ. P. 8(d)(2) & (3) (a plaintiff may assert
claims in the alternative, regardless of consistency).

also as an alternative to Count 1, that it is entitled to a
constructive trust on the initial Deposit paid to ECI for Crane 2
based on the same facts.

In its Motion to Dismiss, ECI argues that Wingspire has
failed to state a claim for unjust enrichment or for imposition
of a constructive trust[73] because there is no causal connection
between the alleged impoverishment of Wingspire and the alleged
enrichment of ECI as a result of its retention of the Deposits
and Crane 1.[74]  ECI argues that Wingspire was impoverished by the
Debtor's failure to repay its loan from Wingspire, not by ECI's
exercise of its rights under its contracts with the Debtor and
the Bankruptcy Code.  ECI contends that it is entitled to retain
the funds paid and Crane 1 because the Debtor breached its
agreements with ECI by failing to pay and by rejecting the
contracts in the bankruptcy case (without any objection by

---

[73]    "To prevail on a claim for unjust enrichment or
imposition of a construct trust the Trustee must allege
sufficient facts to plausibly show that (i) there was an
enrichment, (ii) an impoverishment, (iii) a relation between the
enrichment and impoverishment, (iv) the absence of justification
and (v) the absence of a remedy provided by law."  Burtch v.
Seaport Cap., LLC (In re Direct Response Media, Inc.), 466 B.R.
626, 661 (Bankr. D. Del. 2012).

[74]    See, e.g., Teamsters Loc. 237 Welfare Fund v.
Astrazeneca Pharms LP, No. N04C-11-191, 2015 Del. Super. LEXIS
327, *25 (Del. Super. Ct. July 8, 2015) (dismissing unjust
enrichment claim because plaintiff failed to establish a causal
connection between the alleged enrichment and the alleged
impoverishment).

Wingspire).[75]

Wingspire responds that the Amended Complaint adequately alleges all the facts necessary to state a claim for unjust enrichment and a constructive trust. It alleges that there is a direct correlation between Wingspire's impoverishment (the loss of the funds it paid to ECI) and ECI's enrichment (the retention of both the funds paid and Crane 1).[76] It contends that ECI has provided no consideration to Wingspire to justify the retention of both the payments made and Crane 1. Wingspire cites a case which it argues is directly on point and supports its contention that it has stated claims for unjust enrichment and a constructive trust.[77]

ECI replies that Wingspire's reliance on the <u>Chef's Depot</u> case is misplaced because it is an unreported decision from outside this Circuit applying New York, not Delaware, law. Further, ECI notes that the decision in <u>Chef's Depot</u> was premised, in part, on that Court's conclusion that the plaintiff

---

[75]    <u>See</u> 11 U.S.C. § 365(g) (the debtor's rejection of an executory contract constitutes a breach of that contract immediately before the petition date).

[76]    Adv. D.I. 12 at ¶¶ 58 & 65.

[77]    <u>See, e.g.</u>, <u>Bank Cap. Servs. LLC v. Chef's Depot, Inc.</u>, No. 19 CV 1469, 2019 U.S. Dist. LEXIS 222715 (S.D.N.Y. Dec. 30, 2019) (denying manufacturer's motion to dismiss lawsuit brought by equipment finance company for unjust enrichment and constructive trust based on the manufacturer's retention of both the equipment finance company's progress payments and the equipment).

had stated a claim for a perfected security interest in the equipment at issue.[78]

The Court agrees with ECI that the facts of this case distinguish it from the case on which Wingspire relies.  The Chef's Depot Court found that the plaintiff in that case had a perfected security interest in the equipment in determining that it had stated claims for unjust enrichment, a constructive trust, and replevin.[79]  As the Court found above, Wingspire does not allege facts sufficient to support its claim of a security interest in the Cranes.  Nor does Wingspire allege that it had a security interest in the Deposits.[80]  Thus, the Court finds that the facts in Chef's Depot are distinguishable from the facts in this case.

The Court further finds that Wingspire has failed to state an alternative claim for unjust enrichment and a constructive trust against ECI.  If Wingspire does not have a contractual

---

[78]   Chef's Depot, 2019 U.S. Dist. LEXIS 222715, at *7.

[79]   Id. at *7 & *10.

[80]   Wingspire alleges in the Amended Complaint that the Debtor granted it a security interest in the Deposits.  Adv. D.I. 12 at ¶ 22.  However, it only alleges that it perfected a security interest in the Cranes.  Id. at ¶ 23.  See Del. Code Ann. tit. 6, §§ 9-312(b)(3) & 9-313(a) (a security interest in cash is perfected by possession).  Although the UCC financing statements filed by Wingspire covered all cash deposits of the debtor over which Wingspire had possession or control, once Wingspire paid ECI the Deposits, it no longer had possession of the Deposits.  Adv. D.I. 12 at Ex. E.

relationship with ECI, then the Court agrees with ECI that
Wingspire has failed to allege a sufficient causal relationship
between the impoverishment of Wingspire and the enrichment of
ECI.  In the absence of a direct contract with ECI, Wingspire's
rights against ECI must depend on its rights under the Master
Lease Agreement with the Debtor.  As noted above, because the
Debtor never obtained any title or rights in the Cranes or
Deposits under its contract with ECI, the purported assignment to
Wingspire of the Debtor's rights (and a security interest) in the
Cranes and Deposits had no effect.[81]  Further, the Amended
Complaint alleges that the Master Lease Agreement between
Wingspire and the Debtor provided that Wingspire agreed to make
payments for the Cranes "on behalf of" the Debtor.[82]  It also
alleges that Wingspire advised ECI that it was financing the
construction of the Cranes and would pay ECI directly for them.[83]
Thus, taking the allegations of the Amended Complaint as true,
the Court finds that the payments made by Wingspire to ECI were
in satisfaction of the Debtor's obligation to ECI and were,

---

[81]   See Ruiz, 376 F.3d at 212 (holding that a lessor can
transfer no greater rights than he possesses); United Pac., 1984
Del. Ch. LEXIS 578, at *6 (a security interest does not attach
until the debtor obtains rights in the collateral) (citing Del.
Code Ann. tit. 6, § 9-203(b)(1)-(3).

[82]   Adv. D.I. 12 at ¶ 25 (citing Progress Payment Addendums
at ¶ 2).

[83]   Id. at ¶ 26.

therefore, in essence a loan from Wingspire to the Debtor.

As a general proposition, once loan funds are extended to a debtor, those funds are property of the debtor, and the lender has no claim of ownership to those funds.[84]  Thus, the Court agrees with ECI that once Wingspire agreed to pay the Debtor's obligation to ECI, the funds advanced by Wingspire were the Debtor's property and Wingspire retained no interest in them. Therefore, the Court concludes that Wingspire has not alleged a causal connection between any loss of the funds it lent to the Debtor and any alleged benefit ECI realized by its retention of the Cranes and Deposits.  Rather, it appears that Wingspire was impoverished, if at all, by the failure of the Debtor to repay Wingspire for its loan.

As a result, the Court concludes that the claims for unjust enrichment and constructive trust must be dismissed.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny the Motion to Dismiss as to Count 1 and grant the Motion to Dismiss as to

---

[84]    See, e.g., <u>Cooper Indus., Ltd v. Nat'l Union Fire Ins. Co.</u>, 876 F.3d 119, 129 (5th Cir. 2017) (holding that when plaintiff made a loan it no longer "owned" those funds; instead it "owned" the promissory notes given in exchange for the loan); <u>U.S. v. Kristofic</u>, 847 F.2d 1295, 1296-97 (7th Cir. 1988) (concluding that loan proceeds do not remain property of the lender once they are lent to the borrower and, therefore, borrower could not be prosecuted for theft, embezzlement or conversion of funds lent by the SBA).

Counts 2, 3 and 4.

An appropriate Order is attached.


Dated: February 1, 2024                    BY THE COURT:


Mary F. Walrath
United States Bankruptcy Judge