**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| COOL SPRINGS LLC, | : | |
| Reorganized Debtor | : | Case No. 22-10912 (MFW) |
| _____ | : | |
| | : | |
| WINGSPIRE EQUIPMENT FINANCE LLC, | : | Adv. Pro. No. 23-50395 |
| | : | (MFW) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| E-CRANE INTERNATIONAL USA INC., | : | Rel. Docs. 12, 23, 24 |
| | : | 35, 36, 37, 38, 39, 40, |
| Defendant | : | 41, 42, 43, 44, 45, 49, |
| | : | 50, 52, 53, 55, 56 |

**OPINION**[1]

Before the Court is Wingspire's Motion to Reconsider the Court's Order dismissing Wingspire's unjust enrichment and constructive trust claims. For the reasons stated below, the Court will deny the Motion.

I. <u>BACKGROUND</u>

The Court has detailed the history between these two parties in two prior Opinions and merely summarizes it here.[2] Metal

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] Adv. D.I. 23 (denying in part ECI's motion to dismiss), 50 (granting ECI's motion for summary judgment). References to the docket in the adversary proceeding are to "Adv. D.I.#" while references to the docket in the jointly administered bankruptcy cases are to "D.I.#." The bankruptcy cases were originally jointly administered under Phoenix Services Topco, LLC, Bankr. No. 22-10906; they are currently jointly administered under the

Service (the "Debtor") entered into a contract to purchase two specially-designed cranes (the "Cranes") from E-Crane International USA Inc ("ECI").[3] Wingspire Equipment Finance LLC f/k/a Liberty Commercial Finance LLC ("Wingspire") agreed to finance the purchase of the Cranes, and in return, the Debtor gave all of its rights in the Cranes to Wingspire.[4] Wingspire made $1.5 million in progress payments (the "Deposits") directly to ECI on the Debtor's behalf.[5] The Debtor subsequently filed for bankruptcy protection and rejected the contracts with ECI for construction of the Cranes.[6]

Wingspire subsequently commenced this adversary proceeding to recover the Deposits from ECI.[7] In Count 1 of the Amended Complaint, Wingspire alleged that it had entered into an implied contract with ECI.[8] In Counts 2 and 3, Wingspire alleged ECI was unjustly enriched by retaining the Deposits for the Cranes.[9] In Count 4, Wingspire argued that the Court should impose a

---

Reorganized Debtor, Cool Springs LLC, Bankr. No. 22-10912.

[3]     Adv. D.I. 12 ¶ 3.

[4]     Id.

[5]     Id. ¶ 4.

[6]     D.I. 1 & 701.

[7]     Adv. D.I. 12 ¶ 5.

[8]     Id. ¶¶ 44-51.

[9]     Id. ¶¶ 55-57, 63-65.

constructive trust on the Deposits.[10]

ECI filed a motion to dismiss the Amended Complaint,[11] and in a Memorandum Opinion and Order dated February 1, 2024, the Court granted that motion as to Counts 2, 3, and 4, but denied it as to Count 1 finding that Wingspire had stated a claim that it had a contract with ECI.[12] Thereafter, the parties filed cross motions for summary judgment on Count 1.[13] The Court denied Wingspire's motion for summary judgment and granted ECI's motion for summary judgment, finding that the documents and other evidence on which Wingspire relied did not constitute a contract between the parties.[14] Shortly thereafter, Wingspire filed the instant motion seeking reconsideration of the Court's order dismissing Counts 2, 3, and 4.[15] ECI opposed the motion,[16] and Wingspire filed a reply.[17] The matter is ripe for decision.

---

[10]   Id. ¶ 69.

[11]   Adv. D.I. 15.

[12]   Adv. D.I. 23 at 19-20.

[13]   Adv. D.I. 35 & 37.

[14]   Adv. D.I. 49.

[15]   Adv. D.I. 52.

[16]   Adv. D.I. 55.

[17]   Adv. D.I. 56.

## II. JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding.[18] This action arises under the Court's related to jurisdiction because it involves a question of what was property of the estate as of the Petition Date.[19] Both parties have consented to entry of a final order or judgment by this Court.[20]

## III. STANDARD OF REVIEW

The Court may reconsider its prior orders if there has been a change in controlling law, is newly discovered evidence, or is a need to correct a clear error of law or fact to prevent manifest injustice.[21] The movant must show more than disagreement with a prior ruling; it must show that the error was a "wholesale disregard, misapplication or failure to recognize controlling precedent."[22] A motion for reconsideration is not a

---

[18] 28 U.S.C. §§ 157(b) & 1334(b).

[19] Id. § 157(b).

[20] See Adv. D.I. 12 ¶ 13; Adv. D.I. 16 ¶ 3.

[21] In re Energy Future Holdings Corp., 904 F.3d 298, 310-11 (3d Cir. 2018). See also Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023(a).

[22] Energy Future Holdings 904 F.3d at 311-12 (citations omitted).

vehicle for repeating rejected arguments.[23]

IV. DISCUSSION

Wingspire asserts that the Court erred when it dismissed the unjust enrichment claim finding there was no contract between Wingspire and ECI and therefore no causal connection between Wingspire's impoverishment and ECI's windfall.[24] Wingspire contends that this finding is contrary to Delaware law and unjust enrichment principles, which provide a remedy in the event there is no contract.[25] Wingspire argues that under Delaware law, it should be able to press its unjust enrichment claims now that the Court has determined that no contract exists between ECI and Wingspire.

---

[23] See Dentsply Int'l, Inc. v. Kerr Mfg. Co., 42 F. Supp. 2d 385, 419 (D. Del. 1999) ("[Motions for rehearing] should not be used to rehash arguments already briefed or to allow a 'never ending polemic between the litigants and the Court.'") (quoting Oglesby v. Penn Mutual Life Ins. Co., 877 F. Supp. 872, 892 (D. Del. 1995)).

[24] Adv. D.I. 23 at 23-25.

[25] Freedman v. Beneficial Corp., 406 F. Supp. 917, 923 (D. Del. 1975) ("The quasi contract was developed by the law courts as a device for creating a 'contract' to remedy the absence of mutual promises under circumstances where it is necessary to preclude the unjust retention of an advantage or benefit."). See also Wood v. Coastal States Gas Corp., 401 A.2d 932, 942 (Del. 1979) ("Because the contract is the measure of plaintiffs' right, there can be no recovery under an unjust enrichment theory independent of it."); MetCap Sec. LLC v. Pearl Senior Care, Inc., No. CIV.A. 2129-VCN, 2007 WL 1498989, at *6 (Del. Ch. May 16, 2007) (stating that the doctrine of unjust enrichment is one with "substantial flexibility.") (citation omitted).

Wingspire argues that the only element at issue in the unjust enrichment analysis is proximate causation, which Delaware law defines as "but for" causation.[26] Wingspire believes that the facts now available to the Court demonstrate that ECI was enriched at Wingspire's expense by retaining Wingspire's money for the first Crane and the proceeds of the subsequent sale of that Crane, resulting in a greater recovery for ECI than it would have received if it had sold the Crane to the Debtor.  Wingspire contends that ECI's intent to gain this windfall is evidenced by ECI's refusal to negotiate with Wingspire on an agreement that would have made ECI whole by Wingspire paying the remaining amounts for the first Crane.  Wingspire argues that this new evidence warrants reconsideration of the Court's dismissal of its unjust enrichment and constructive trust claims to prevent manifest injustice.[27]  Wingspire contends that the new evidence confirms the need for reconsideration, because the equities of the case are different now than they were at the motion to dismiss stage.  Wingspire contends that the Court should consider

---

[26]   Duphily v. Delaware Elec. Co-op., Inc., 662 A.2d 821, 828-29 (Del. 1995) (defining "but for" causation in a negligence action); Chudnofsky v. Edwards, 208 A.2d 516, 518 (Del. 1965) (same).

[27]   See Principal Growth Strategies, LLC v. AGH Parent LLC, No. 2019-0431-JTL, 2024 WL 274246, at *21 (Del. Ch. Jan. 25, 2024) (denying request to dismiss plaintiff's constructive trust claims because it is "the typical remedy for an unjust enrichment claim when specific property can be identified" which the court had found the plaintiff had adequately stated).

these new facts because the original ruling has become inequitable and produced unintended consequences.[28]

ECI agrees with Wingspire that a constructive trust is a remedy for unjust enrichment but argues that the Court should not reconsider its decision to dismiss the unjust enrichment claim should not be reconsidered.  ECI asserts that Wingspire is simply rehashing its previous arguments which the Court properly rejected.  Contrary to Wingspire's assertion, ECI notes that the Court did not dismiss the unjust enrichment claim simply because Wingspire asserted it had a contract with ECI but instead correctly determined that there was no causal relationship between the loss of the funds lent by Wingspire to the Debtor and any benefit ECI gained from the Deposits and proceeds from the sale of the first Crane.[29]

---

[28] See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (stating the standard for reconsideration but affirming district court's denial because the movant had presented no new evidence or other basis for reconsideration); In re JLM Couture, Inc., No. 23-11659 (JKS), 2024 WL 3100775, at *1 (Bankr. D. Del. June 21, 2024) (granting in part landlord's motion for reconsideration because the court had made an error in calculating the amount of rent due).

[29] Adv. D.I. 23 at 23-25 (citing Cooper Indus., Ltd v. Nat'l Union Fire Ins. Co., 876 F.3d 119, 129 (5th Cir. 2017) (holding that when plaintiff made a loan it no longer "owned" those funds; instead it "owned" the promissory notes given in exchange for the loan); U.S. v. Kristofic, 847 F.2d 1295, 1296-97 (7th Cir. 1988) (concluding that loan proceeds do not remain property of the lender once they are lent to the borrower and, therefore, borrower could not be prosecuted for theft, embezzlement, or conversion of funds lent by the SBA)).

ECI further contends that the alleged "new facts uncovered during discovery" are not a sufficient justification for reconsideration of the decision on its motion to dismiss. First, ECI notes that the Court properly considered only the facts as alleged in the Complaint in ruling on the motion to dismiss.[30] Second, ECI asserts that even considering the "new" evidence, there is no basis for Wingspire's claims. ECI contends that it sold the first Crane in an effort to mitigate its damages and incurred substantial new costs to store the Crane during the Debtor's bankruptcy case and then to redesign and fabricate it to meet the specifications of the new buyer. ECI states that Wingspire has not provided any evidence that Wingspire ever offered to pay the remaining balance on the first Crane but that it is irrelevant because ECI had no obligation to negotiate with Wingspire.

ECI argues that although Wingspire continues to refer to the Deposits as "Wingspire's money," the Court already found that characterization is inaccurate because those funds were money lent to the Debtor by Wingspire and title to that loaned money

---

[30] See Sec. & Exch. Comm'n v. Acord, No. 09-21977-CIV, 2010 WL 11505578, at *1 (S.D. Fla. Feb. 23, 2010) (denying the defendant's motion to reconsider an earlier-denied motion to dismiss on the basis of newly discovered evidence because summary judgment was the appropriate vehicle to attack the allegations of the complaint).

passed to the Debtor, as borrower.[31]  Therefore, ECI contends that there is still no evidence of a connection between the enrichment, if any, it received and any impoverishment Wingspire suffered from the Debtor's failure to repay the loan.

The Court concludes that Wingspire's arguments for reconsideration are deficient for several reasons.  First, Wingspire misstates the Court's basis for dismissing its unjust enrichment claim.  The Court did not dismiss that claim simply because Wingspire had stated a claim for breach of contract.  Instead, it found that

> If Wingspire does <u>not</u> have a contractual relationship with ECI, then the Court agrees with ECI that Wingspire has failed to allege a sufficient causal relationship between the impoverishment of Wingspire and the enrichment of ECI. . . .  [T]aking the allegations of the Amended Complaint as true, the Court finds that the payments made by Wingspire to ECI were in satisfaction of the Debtor's obligation to ECI and were, therefore, in essence a loan from Wingspire to the Debtor.
>     As a general proposition, once loan funds are extended to a debtor, those funds are property of the debtor, and the lender has no claim of ownership to those funds.[32]

Therefore, the Court's later determination, in ruling on the

---

[31] <u>See</u> Adv. D.I. 50 at 18; Adv. D.I. 23 at 24.

[32] Adv. D.I. 23 at 23-24 (emphasis added) (citing <u>Cooper Indus.</u>, 876 F.3d at 129 (holding that when plaintiff made a loan it no longer "owned" those funds; instead it "owned" the promissory notes given in exchange for the loan); <u>Kristofic</u>, 847 F.2d at 1296-97 (concluding that loan proceeds do not remain property of the lender once they are lent to the borrower and, therefore, borrower could not be prosecuted for theft, embezzlement, or conversion of funds lent by the SBA)).

cross motions for summary judgment, that there was not a contract between Wingspire and ECI does not change the Court's conclusion that Wingspire has not stated (or proven) a claim against ECI for unjust enrichment.

Second, Wingspire is asking the Court to reconsider a motion to dismiss. In evaluating a motion to dismiss, the Court should consider only the allegations of the complaint to determine whether the plaintiff has stated a plausible claim.[33] Therefore, any evidence later discovered is not relevant to whether Wingspire originally stated a claim upon which the Court can grant relief.[34] Nonetheless, the "new evidence" that Wingspire asks the Court to now consider (that ECI has sold the first Crane) does not change its conclusion that Wingspire has no claim for unjust enrichment. In response to ECI's motion to dismiss, Wingspire argued that it was impoverished because (1) ECI kept the Deposits and the Cranes and (2) ECI intended to keep any proceeds from the sale of the Cranes.[35] That argument cited

---

[33] See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[34] Fed. R. Civ. Pro. 12(b)(6).

[35] Adv. D.I. 20 at 13-14 ("Wingspire has been denied return of any of its approximately $1,500,000 in payments or right to reimbursement of such amounts from the proceeds of the sale of Crane 1. . . . ECI provides no justification for its retention of both the monies paid to it by Wingspire and the Cranes or the intent to retain any proceeds from the sale of the Cranes.").

allegations in the Complaint that it was inequitable for ECI to retain the Deposits and keep the Cranes (including any proceeds of a future sale of the Cranes).[36] The Court nonetheless concluded that even if there was no contract, and accepting the allegations of the Complaint as true, Wingspire had stated no claim to the Deposits, the Cranes, or any proceeds of the future sale of those Cranes under an unjust enrichment theory.[37] Wingspire's effort to find "new evidence" to support its claim therefore fails because the Court already considered the possibility of that evidence.

Finally, Wingspire has not cited any new authority, controlling or persuasive, that supports its argument that the Court erred in concluding that the loan Wingspire made to the Debtor did not create any interest, legal or equitable, to the Cranes or to the Deposits paid on the Debtor's behalf to ECI.[38]

---

[36] Adv. D.I. 12 ¶¶ 57, 58.

[37] Adv. D.I. 23 at 23-24.

[38] See Adv. D.I. 50 at 18 ("in the context of all the other evidence showing that Wingspire was merely financing the Debtor's purchase of the Cranes. . . , the Court concludes that the payments reflect only that Wingspire was paying ECI on the Debtor's behalf."); Adv. D.I. 23 at 24-25 (concluding that Wingspire had not stated any claim of unjust enrichment by ECI's retention of the Deposits because they were loans by Wingspire to the Debtor and once made, Wingspire retained no interest in them) (citing Cooper Indus, 876 F.3d at 129; Kristofic, 847 F.2d at 1296-97). See also Garr v. Martin, 20 N.Y. 306, 309 (1859) (stating that, as a general principle, "where one person advances money for another, in payment of the debt of the latter, it is deemed at the instant of its payment, to be the money of the

In sum, the Court finds that Wingspire is merely rehashing arguments it has already made, citing facts the Court has already considered, and providing no legal authority to support its assertion that manifest injustice results from the Court's prior rulings.[39]

Therefore, the Court will deny Wingspire's Motion to Reconsider the Court's prior decision dismissing Counts 2-4 of the Amended Complaint.

V. CONCLUSION

For the foregoing reasons, the Court will deny the Motion for Reconsideration.

An appropriate Order is attached.

Dated: January 2, 2026

BY THE COURT:

_Mary F. Walrath_
Mary F. Walrath
United States Bankruptcy Judge

---

party for whose benefit the payment is made; so that in the eye of the law the debt is satisfied, not by the money of a third party, but by that of the debtor himself.").

[39] Energy Future Holdings, 904 F.3d at 310-11 (describing the standard for a motion to reconsider). See also Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023(a).